UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DOROTHY M.,[1]

    **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

    **Defendant.**

Case No. 3:23-cv-3292
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Dorothy M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

I.    PROCEDURAL HISTORY

On March 10, 2020, Plaintiff filed her application for benefits, alleging that she has been disabled since October 1, 2011. R. 95, 101, 207–08, 215–21. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

and upon reconsideration. R. 105–14, 116–25. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 140–54. ALJ Andrew Soltes, Jr. held a hearing on November 22, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–89. In a decision dated February 11, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from October 1, 2011, Plaintiff's alleged disability onset date, through December 31, 2017, the date on which Plaintiff was last insured for benefits. R. 21–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 9, 2022. R. 7–12. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 15, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3] On that same day, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

3

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.     ALJ DECISION AND APPELLATE ISSUES**

Plaintiff was 53 years old on December 31, 2017, the date on which she was last insured for benefits. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 1, 2011, her alleged disability onset date, and her date last insured. R. 23.

At step two, the ALJ found that Plaintiff's rheumatoid arthritis and osteoarthritis were severe impairments. *Id*. The ALJ also found that Plaintiff's medically determinable mental impairments of depression and anxiety were not severe and that her alleged post-traumatic stress disorder ("PTSD") was not a medically determinable impairment. R. 24–26.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 26–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an accounting clerk. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g*., jobs as a marker, a routing clerk, and a mail clerk–existed in the national economy and could be performed by Plaintiff with this RFC. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2011, her alleged disability onset date, through December 31, 2017, the date on which she was last insured for benefits. R. 31.

Plaintiff argues that the ALJ failed in his duty to develop the record and she disagrees with

the ALJ's findings at steps two and four; she asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Stewart Reiter, M.D.

On June 9, 2011, Stewart Reiter, M.D., Plaintiff's treating psychiatrist, first evaluated Plaintiff for complaints of "Major Depression" and "panic attacks" upon referral by Dr. Neil Bergman, Plaintiff's treating therapist. R. 541–43. Plaintiff reported a "lifelong history of baseline dysphoria, anxiety and anhedonia," and "precipitated and unprecipitated panic attacks characterized by intense anxiety, feelings as if she is going to pass out, palpitations with some nausea and [she] claims that they last a few minutes and had two of them this week. The [claimant] describes having had them throughout her whole life." *Id*. Mental examination revealed good eye contact without psychomotor abnormality, clear and fluent speech, anxious mood and dysphoria, but affect that was consistent with mood and appropriate to the situation and content, no thought disorder or psychotic symptoms, grossly intact cognition, and no evidence of suicidal or homicidal ideation. R. 542. Dr. Reiter diagnosed major depression, recurrent, panic disorder, alcohol/benzodiazepine abuse (Axis I). R. 543.   Dr. Reiter continued to treat Plaintiff through May 2016. R. 544–57, 560.

### B.     Karl Chen, M.D.

On May 12, 2011, Plaintiff reported to her primary care physician, Karl Chen, M.D., that

"since back on Seroquel, [she has] been better but still has moments with anxiety att[]acks espec[ia]lly at sleep facilities. and BP's been low at home. [S]elf titrate down on diovan and propranolol. feels much better otherwise[.]" R. 436

On July 12, 2011, Plaintiff reported to Dr. Chen that she "feels tired/fatigued from the psychiatric medications [but] otherwise, feels ok." R. 435. In October and November 2012, Plaintiff reported "panic attack like symptoms" after receiving a vitamin B12 injection. R. 409–411. Labs, EKG, and other workup were negative. R. 411. On January 15, 2013, Plaintiff followed up with Dr. Chen following a hospitalization "due to chest tightness and axiety [sic]. [A]ll work up neg." R. 401. Noting that Plaintiff was in "no acute distress," Dr. Chen diagnosed anxiety, depression, hypertension, hypothyroidism, and status post splenonectomy." *Id*.

On October 11, 2013, Plaintiff reported "[n]o depressive symptoms, no changes in sleep habits, no changes in thought content." R. 385. At a November 25, 2014, sick visit, Dr. Chen's notes do not reflect a mental status examination or any mental health complaints from Plaintiff. R. 366. However, Dr. Chen diagnosed, *inter alia*, "stress induced anxiety." *Id*.

On October 22, 2015, and April 13, 2017, Plaintiff presented to Dr. Chen for physical examinations. R. 359, 656–57. During both visits, Dr. Chen noted reports of "[n]o depressive symptoms, no changes in sleep habits, no changes in thought content." R. 359, 657.

    C.    **State Agency Consultants**

Steven B. Reed[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on June 12, 2020. R. 91–93. Consultant Reed found that the medically determinable impairments of anxiety and obsessive-compulsive disorder were severe. R. 92. He considered

---

[4] Other than a medical specialty code of psychology, R. 92, this consultant's credentials are not apparent in the record.

9

Listing 12.06, but could not assess that listing's paragraph B and C criteria due to "Insufficient Evidence[.]" *Id*.

Annamaria Pruscino[5] reviewed Plaintiff's medical record upon reconsideration for the state agency on July 7, 2021. R. 98–100. According to Consultant Pruscino, the record documented severe medically determinable impairments of anxiety and obsessive-compulsive disorders as well as depressive, bipolar and related disorders. R. 98. She also considered Listing 12.06 but, like Consultant Reed, she was unable to assess that listing's paragraph B and C criteria due to "Insufficient Evidence[.]" R. 98–99. Consultant Pruscino went on to explain as follows:

> DLI [date last insured] in the past, 12/31/17. Psych records, from 2011 to 2016. Was diagnosed with Major Depression-recurrent with Panic disorder and with Alcohol/Benzodiazapine abuse on 6/2011. Was prescribed psych meds. No psych records since 2015-2016; *psych notes were mostly illegible*. No ADL [activities of daily living] information available for the relevant time period. Therefore, insufficient psych evidence to rate this case prior to DLI.

R. 99 (emphasis added).

**V.    DISCUSSION**

Plaintiff contends that the ALJ failed to develop the record, resulting in a flawed step two evaluation finding that Plaintiff suffered no severe mental impairment and a flawed step four evaluation that failed to consider Plaintiff's mental impairments when crafting the RFC. *Plaintiff's Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. For the reasons that follow, Plaintiff's arguments are not well taken.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to

---

[5] Other than a medical specialty code of psychology, R. 99, this consultant's credentials are not apparent in the record.

develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). Moreover, when the claimant is represented by counsel, it is the claimant's counsel who is "responsible for ensuring that the ALJ was aware of any facts favorable to [the claimant's] claim for benefits." *Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002). Relatedly, "the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits" when counsel represents the claimant at the administrative level. *Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019).

An ALJ retains the discretion, but not the duty, to order a consultative examination. *See* 20 C.F.R. § 404.1520b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense[.]") (emphasis added); *see also Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the

11

consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating, "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method").

Similarly, an ALJ is vested with broad discretion in determining whether to consult with a medical expert. *Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006); *see also* 20 C.F.R. § 404.1529(b) ("At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) *may* ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms.") (emphasis added); *Miguel v. Comm'r of Soc. Sec.*, 129 F. App'x 678, 680 (3d Cir. 2005) (The regulations do not require that a medical expert testify at the claimant's hearing.").

Finally, an ALJ has the discretion, but not the duty, to recontact a medical source. Specifically, "[i]f the evidence is consistent but [the ALJ has] insufficient evidence to determine whether [the claimant is] disabled, or if after considering the evidence [the ALJ] determines [he] cannot reach a conclusion about whether [the claimant is] disabled . . . [the ALJ] *may* recontact your medical source." 20 C.F.R. § 404.1520b(b)(2)(i) (emphasis added). If "there was sufficient evidence in the medical records for the ALJ to make her decision[,]" the ALJ need not recontact a treating source. *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d Cir. 2004); *see also Gladden o/b/o Hyman-Self v. Berryhill*, No. CV 17-1832, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28,

2018) ("There is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled.").

In the present case, the ALJ found at step two of the sequential evaluation that Plaintiff suffered the severe impairments of rheumatoid arthritis and osteoarthritis, but that her medically determinable mental impairments of depression and anxiety, whether considered singly or in combination, were not severe:

> At the hearing, the claimant also testified that her ability to work is limited by depression, anxiety with panic attacks, and PTSD. Based on the medical evidence, I must conclude that the claimant's medically determinable mental impairments of depression and anxiety, either singly or in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere.
>
> On June 9, 2011, the claimant established outpatient treatment with psychiatrist Stewart Reiter, M.D. At that time, she reported a "lifelong history of baseline dysphoria, anxiety and anhedonia," and "precipitated and unprecipitated panic attacks characterized by intense anxiety, feelings as if she is going to pass out, palpitations with some nausea and claims that they last a few minutes and had two of them this week. The [claimant] describes having had them throughout her whole life." A mental status examination at that time was within normal limits (Ex. 3F at 2-3). Records from Dr. Reiter show treatment through May 2016; *however, his subsequent reports are brief and handwritten, with some level of illegibility.* These records generally reflect that the claimant reported partial improvement in her symptoms with medication. She quit her job in September 2011, and reported on October 27, 2011 that she was doing "better," with less anxiety. Subsequent records document changes in the claimant's medication based on subjectively reported symptoms, but with no detailed mental status examinations. In September and December 2013, the claimant stated that she "feels better" and was doing "OK." Records through the remainder of Dr. Reiter's documented treatment generally reflect that the claimant was doing well on her medication (Ex. 3F at 5-18; 4F).
>
> *It is noteworthy that Dr. Reiter stated that the claimant was referred to him "by her therapist, Dr. Neil Bergman"* (Ex. 3F at 2). *However, the claimant has not provided any records from Dr. Bergman, and the record does not specifically reference outpatient therapy after her intake with Dr. Reiter.*
>
> *During this period, the claimant also received primary care from Karl Chen, M.D. However, his records contain only a modicum of evidence regarding her mental impairments* (Ex. 1F; 2F; 6F at 79-109). The last documented discussion the claimant had with Dr. Chen regarding her mental impairments occurred in January

13

2013, *after the claimant was hospitalized for two days due to chest tightness and anxiety*; a workup showed no physical cause of her symptoms (Ex. 2F at 3). In October and November 2012, the claimant reported "panic attack like symptoms," which may have been related to vitamin D[6] injections and tamoxifen (Ex. 2F at 11-13). Prior to that, Dr. Chen's records do not show discussion of the claimant's mental impairments since July 12, 2011, at which time she indicated that she feels "tired/fatigued from the psychiatric medications[.] Otherwise, feels ok" (Ex. 2F at 37). In May 2011, the claimant indicated that her anxiety and depression were improving since she was "back on Seroquel," though she had "moments with anxiety attacks" (Ex. 2F at 38). During an annual physical examination on October 11, 2013 indicates "no depressive symptoms, no changes in sleep habits, no changes in thought content" (Ex. 1F at 66). In November 2014, the claimant reported increased blood pressure "due to personal family issues," which was diagnosed as "stress induced anxiety," but there was no complaint of other symptoms, such as panic attacks, and no mental status examination was performed (Ex. 1F at 47). A review of symptoms in October 2015 also shows no complaints of mental symptoms (Ex. 1F at 40). During an April 2017 annual physical, the claimant had no complaints of psychiatric symptoms (Ex. 6F at 91).

In making this finding, I have considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

Based on the medical evidence, which shows that the claimant generally has had good response to treatment during the period at issue, and taking into the consideration the lack of detailed mental status examinations from her treating psychiatrist and the lack of opinion evidence regarding her mental impairments from any source, I find that the claimant had the following "paragraph B" limitations: no limitation for understanding, remembering or applying information; no limitation for interacting with others; no limitation for concentrating, persisting or maintaining pace; and mild limitation for adapting or managing oneself. These conclusions are supported by the claimant's history of some panic in reaction to stress, but improvement with medication, and the mental status examinations from Drs. Chen and Reiter, which show no significant abnormality.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional

---

[6] The ALJ mistakenly referred to vitamin D instead of vitamin B12. R. 411.

>capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

R. 25–26 (emphasis added); *see also* R. 26 (finding further that Plaintiff's alleged PTSD "is not reflected in the treatment reports of Drs. Reiter or Chen, and has not been assessed by any other acceptable medical source through the date last insured" and, therefore, Plaintiff "has not met her evidentiary burden of establishing posttraumatic stress disorder as a medically determinable impairment"). The Court finds no error with the ALJ's consideration in this regard.

Plaintiff, however, complains that the ALJ erred in failing to further develop the record regarding Plaintiff's mental impairments. *Plaintiff's Brief*, ECF No. 8, pp. 12–20. Plaintiff first contends that "the record was insufficient to permit the ALJ to find that the Plaintiff *did not suffer from <u>any</u> mental impairments*" and argues that she "clearly raised the issue of mental impairments in her testimony at the administrative hearing" and during other points in the administrative process. *Id*. at 12–14 (emphasis added); *see also Plaintiff's Reply Brief*, ECF No. 13, p. 2 ("In this matter, the record was insufficient to allow the ALJ to determine that the Plaintiff *did not suffer from <u>any</u> mental impairments*.") (emphasis added). Plaintiff's argument mis-characterizes both the record and the ALJ's findings. As set forth above, the ALJ expressly considered evidence relating to Plaintiff's mental impairments and found that, although Plaintiff in fact suffered from, *inter alia*, the medically determinable impairments of depression and anxiety, those impairments were not severe. R. 24–26.

Plaintiff also contends that the ALJ erred in finding that Plaintiff's mental impairments were not severe without properly developing the record. *Plaintiff's Brief*, ECF No. 8, pp. 13–20; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–3. Plaintiff argues that the ALJ was on notice of deficiencies in the adequacy of the administrative record regarding her mental impairments: The

ALJ acknowledged "some level of illegibility" in Dr. Reiter's treatment notes, recognized that the records of Dr. Bergman, Plaintiff's treating therapist who had referred Plaintiff to Dr. Reiter, were missing from the record, and noted that the state agency reviewing consultants had found "[i]nsufficient evidence" to evaluate Plaintiff's mental impairments.[7] *Id*. Under these circumstances, Plaintiff argues, the ALJ had a duty to further develop the record by, for example, ordering a consultative examination, securing the testimony of a medical expert, requesting Dr. Bergman's records or testimony, or recontacting Dr. Reiter regarding notes. *Id*. Plaintiff's arguments are not well taken.

      Plaintiff was represented by counsel throughout the entire administrative process. R. 103 (appointment of counsel dated March 10, 2020, the day on which Plaintiff's claim was filed), 37–89 (appearing on behalf of Plaintiff at the November 22, 2021, administrative hearing), 317–19 (counsel's brief submitted to the Appeals Council). Prior to the administrative hearing, Plaintiff's counsel advised the ALJ of counsel's attempts to secure additional medical records. R. 294 (advising of an outstanding request directed to Dr. Amy Kowalewski), 301 (advising of requests sent to Deborah Hospital and Southern Ocean Medical). At the administrative hearing, Plaintiff's counsel requested additional time to obtain records from Dr. Amy Kowalewski, Robert Wood Johnson Hospital, JFK Hospital, and Southern Ocean Medical. R. 44–46. The ALJ agreed to hold the record open for the submission of those records. R. 46–47, 87–88. After counsel had neither submitted those records nor requested additional time in which to do so, the ALJ warned counsel that a decision would be issued based on the available evidence. R. 315. On February 2, 2022, counsel specifically advised the ALJ that "[w]e have submitted the

---

[7] As discussed in more detail below, at step four of the sequential evaluation, the ALJ noted that the state agency reviewing consultants had "concluded that there was insufficient evidence to evaluate the claimant's mental impairments." R. 29.

16

outstanding medical records, *and the record is now complete*." R. 316 (emphasis added). In short, Plaintiff –whose burden it was to develop the record and establish her claim to benefits— failed to do so. Significantly, Plaintiff offers no suggestion that the information contained in the records of Dr. Reider or Dr. Bergman would support her claim to benefits. Moreover, although Plaintiff now insists that the ALJ had the duty to develop the record by, *inter alia*, ordering a consultative examination or obtaining the services of a medical expert, Plaintiff made no such request of the ALJ. Indeed, Plaintiff's counsel expressly characterized the record before the ALJ as "complete". *Id*. Under these circumstances, the ALJ was entitled to assume that Plaintiff had made the strongest possible case for benefits. *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) for the proposition that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say").

      Moreover, Plaintiff has not persuaded the Court that the record was so deficient as to preclude the ALJ from assessing Plaintiff's mental limitations. As detailed above, the ALJ acknowledged that Dr. Reiter's notes had "some level of illegibility[,]" but went on to find that this provider's records showed partial improvement in her symptoms with medication and generally reflected that she was doing well. R. 24 (citations omitted). The ALJ also considered evidence from Dr. Chen regarding Plaintiff's mental limitations, including, *inter alia*, a January 2013 hospitalization for chest tightness and anxiety; panic attack-like symptoms possibly caused by a vitamin injection; improvement despite some fatigue associated with psychiatric medications, and no complaints of effects associated with her mental impairments in November 2014, October 2015, and April 2017. R. 25 (citations omitted). Although Plaintiff suggests that the state agency reviewing consultants' opinions of insufficient evidence means that the ALJ

17

could not assess Plaintiff's mental impairments, the ALJ implicitly rejected those opinions when he detailed medical evidence supporting his finding that Plaintiff's mental impairments were not severe. R. 24–26. In other words, the ALJ considered the objective medical evidence of record and determined that the record before him offered sufficient information to reach a conclusion. Substantial evidence supports that determination. Plaintiff therefore has not persuaded this Court that the ALJ erred in declining to exercise his discretion to order a consultative examination, obtain a medical expert, or recontact Dr. Reiter or Dr. Bergman.

Plaintiff also argues that the ALJ relied on only his own lay opinion to craft Plaintiff's RFC. *Plaintiff's Brief*, ECF No. 8, pp. 20–24; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. In advancing this argument, Plaintiff again points to the alleged deficiency of the record and the lack of any medical opinion regarding Plaintiff's functional limitations. *Id*. Plaintiff's arguments are not well taken. As a preliminary matter, her contention regarding the claimed insufficiency of the record is unavailing for the reasons already explained. Moreover, to the extent that Plaintiff suggests that an ALJ must support every RFC limitation with a matching medical opinion, Plaintiff is mistaken. As previously noted, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably,

"the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. Finally, although Plaintiff complains that the ALJ erred in assessing her mental limitations and the RFC, she does not identify any different or additional restrictions flowing from her mental limitations that the ALJ should have considered or included in the RFC to accommodate such impairments. *See generally Plaintiff's Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. Notably, the vocational expert identified three unskilled jobs—marker, routing clerk, mail clerk—appropriate for a hypothetical individual with the RFC ultimately found by the ALJ. R. 26, 80–82. The vocational expert further confirmed that those three jobs would remain available to the claimant with the additional limitations of low-stress occupations (SVP 1 or 2), simple routine tasks, and few changes in the workplace setting. R. 84. In short, Plaintiff has not shown that the ALJ erred in considering Plaintiff's mental impairments or in crafting the RFC, nor has she established that any error alleged by her actually worked to her prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

    For these reasons, the Court **AFFIRMS** the Commissioner's decision.

    The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  June 27, 2025                                *s/Norah McCann King*
                                                           NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE